Patricia **FAHEY**, Bradley Haskins, George Lawson and Marcus White, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Paul **LAXALT**, individually, and as the Governor of the State of Nevada, John Koontz, individually, and as the Secretary of State of the State of Nevada, the Nevada State Board of Education, Louis Bervegin, Donald Cooper, Mary Fulstone, George E. Harris, Lloyd L. Jones, Ronald Logar, Samuel C. Mc-Mullen and Hugh M. White, individually and as members of the State Board of Education of the State of Nevada, Defendants.

Civ. No. LV–1272.

United States District Court,
D. Nevada.

April 30, 1970.

David Canter, Las Vegas, Nev., for plaintiffs.

Harvey Dickerson Atty. Gen. of Nevada, Carson City, Nev., for defendants.

Before MERRILL, Circuit Judge, and FOLEY and Thompson, District Judges.

OPINION

ROGER D. FOLEY, District Judge:

This is a class action commenced by four residents and qualified electors[1] of the State of Nevada and of its Educational Supervision District No. 5, seeking declaratory judgment and an injunction to redress alleged deprivation of rights guaranteed to them and to others of their class by the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

This Court has jurisdiction. 28 U.S. C. § 2201 et seq.; 28 U.S.C. § 1343(3); 42 U.S.C. §§ 1983, 1988.

The defendants are the Governor and the Secretary of State of Nevada, the

---

1. Article 2, Sec. 1, the Constitution of the State of Nevada, defines a qualified elector.

Nevada State Board of Education, and the individual members thereof.

■ Plaintiffs contend that Sections 385.280 and 385.020 of the Nevada Revised Statutes, as amended, are unconstitutional and seek a declaration of unconstitutionality by this Court, together with an injunction against the application of the said statutes to the forthcoming 1970 primary and general elections.

We hold that this special three-judge district court was properly convened under 28 U.S.C. §§ 2281–2284.

Section 385.280 N.R.S. is set forth in Footnote 2.[2]

Section 385.020 N.R.S., as amended, Chapter 625, p. 1224, Statutes of Nevada, 1969 Regular Session, Vol. 2, is set forth in Footnote 3.[3]

It has been stipulated between counsel for the plaintiffs and defendants that the 1967 estimates of population for the State of Nevada and for the counties comprising its six educational supervision districts, set forth in 385.280 N.R.S., as prepared by the United States Department of Commerce, Bureau of Census, are reliable population estimates and are reasonably accurate estimates of the 1967 population of the state and of

2. "Educational supervision districts: Establishment; change of boundaries.
"1. Six educational supervision districts are hereby established as follows:
"District No. 1. Elko County shall comprise educational supervision district number 1.
"District No. 2. White Pine, Nye, Esmeralda and Eureka Counties shall comprise educational supervision district number 2.
"District No. 3. Humboldt, Pershing and Lander Counties shall comprise educational supervision district number 3.
"District No. 4. Washoe and Churchill Counties shall comprise educational supervision district number 4.
"District No. 5. Lincoln and Clark Counties shall comprise educational supervision district number 5.
"District No. 6. Storey, Ormsby, Douglas, Lyon and Mineral Counties shall comprise educational supervision district number 6.
"2. Notwithstanding the provisions of subsection 1, the state board of education may make such changes in the boundaries of the educational supervision districts as may be found, in the judgment of the state board of education, to be better adapted to the needs of the several educational supervision districts."

3. "State board of education: Composition; election and appointment of members; terms; filling of vacancies.
"1. The state board of education shall consist of nine lay members: Seven members shall be elected, one from each of the educational supervision districts of the state and one additional member from the educational supervision district having the greatest population; and two members shall be appointed by the elected members of the board.

"2. The elective lay members shall be elected as follows:
"(a) At the general election in 1956, and every 4 years thereafter, three members shall be elected, one from each of the odd-numbered educational supervision districts.
"(b) At the general election in 1958, and every 4 years thereafter, three members shall be elected, one from each of the even-numbered educational supervision districts.
"(c) At the general election in 1970, and every 4 years thereafter, one additional member shall be elected from the educational supervision district having the greatest population. Until such election such membership shall be filled by appointment of the governor.
"3. Each of the lay members so elected shall hold office for a term of 4 years.
"4. The elected members shall appoint two members to serve for terms of 4 years, but the members so appointed shall not be residents of the same county. One of the appointed members shall be representative of labor, and one shall be representative of agriculture.
"5. If a vacancy shall occur on the board from among the elected members, the governor shall appoint a member to fill the vacancy until the next general election, at which election a member shall be chosen for the balance of the unexpired term. If a vacancy shall occur in the office of an appointive member, the elected members shall fill the vacancy by the appointment of a new member for the remainder of the unexpired term.
"6. For the purposes of this section, the population of each educational supervision district shall be determined from the last preceding national census of the Bureau of the Census of the United States Department of Commerce."

the counties comprising the six educational supervision districts. In view of this stipulation, the 1967 estimates of population will be used as our yardstick in this case.

If allowed to govern the 1970 primary and general elections, Sections 385.280 and 385.020 N.R.S. will, based upon the 1967 estimated population figures, produce the following results:

| DISTRICTS | COUNTIES | POPULATION | ELECTED MEMBERS | PERCENTAGE OF STATE POPULATION PER MEMBER |
|---|---|---|---|---|
| 1 | Elko | 16,050 | 1 | 3.2% |
| 2 | White Pine, Nye, Esmeralda, Eureka | 17,796 | 1 | 3.6% |
| 3 | Humboldt, Pershing, Lander | 13,460 | 1 | 2.7% |
| 4 | Washoe, Churchill | 136,103 | 1 | 27.4% |
| 5 | Clark, Lincoln | 272,707 | 2 | 27.45% |
| 6 | Storey, Ormsby, Douglas, Lyon, Mineral | 40,331 | 1 | 8.1% |
| | Total State Population | 496,447 | | |

———◆———

The weight given the vote of each voter in the counties comprising District No. 3 (having 2.7% of the population of the state) is equal to the weight given the vote of each voter in District No. 4 (having 27.4% of the population of the state). The voters of Districts 1, 2, 3 and 6, having a total population of only 87,637 persons, or a mere 17.65% of the population of the state, elect four members of the board. Four elected members control the board. One vote cast in District 3 is approximately equal to ten votes cast in Districts 4 and 5.

In the Nevada legislative reapportionment case, Dungan v. Sawyer (1965), 250 F.Supp. 480, this Court stated in part, pages 486 and 487:

"Dilution of political power between thinly and heavily populated counties of a state is no longer permissible. (Gray v. Sanders, 372 U.S. 368, 83 S. Ct. 801, 9 L.Ed.2d 821 (1963).)

"Where votes of citizens are 'watered-down' solely because of their residence in one political subdivision rather than another, such difference in weight of vote is an invidious discrimination against the least favored voter, and unconstitutional because violative of the Equal Protection Clause * * * which require(s), stated in shorthand, 'one man, one vote.' Gray v. Sanders, supra."

The six educational districts established in Subsection 1 of Section 385.280 N.R.S. and the provisions in Subsections 1 and 2 of Section 385.020 N.R.S., as amended, for the election of seven members of the State Board of Education invidiously discriminate in favor of the four small rural districts and contain built in bias against the two large and principally urban districts.[4]

The defendants have not urged that the portions of the statutes in question

4. Furthermore, there is built-in discrimination between Districts 1, 2 and 3 on the one hand, and District 6 on the other, although to a lesser degree than between small county districts and the large and principally urban county districts.

pass muster under the one man, one vote rule of Baker v. Carr (1962), 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Wesberry v. Sanders (1964), 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; Reynolds v. Sims (1964), 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and their progeny. Rather, it has been the defendants' position that the one man, one vote rule does not apply to the State Board of Education. The State Attorney General has relied upon Sailors v. Board of Education (1967), 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650, and Hadley v. Junior College (Mo.1968), 432 S.W.2d 328, and has attempted to distinguish Avery v. Midland County, Texas (1967), 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45. At the time this case was submitted to the Court for decision, December 5, 1969, the Attorney General's argument had certain appeal.

However, the matter has since been laid to rest. On February 25, 1970, the Supreme Court of the United States, in Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45, reversed the Missouri Supreme Court. We believe this latest pronouncement to be directly in point and controlling in our case.

The high court stated in part, and we quote:

"This Court has consistently held in a long series of cases, that in situations involving elections, the States are required to insure that each person's vote counts as much, insofar as it is practicable, *as any other person's.* We have applied this principle in congressional elections, state legislative elections, and local elections. The consistent theme of those decisions is that the right to vote in an election is protected by the United States Constitution against dilution or debasement. While the particular offices involved in these cases have varied, in each case a constant factor is the decision of the government to have citizens participate individually by ballot in the selection of certain people who carry out governmental functions.

Thus in the case now before us, while the office of junior college trustee differs in certain respects from those offices considered in prior cases, it is exactly the same in the one crucial factor—these officials are elected by popular vote.

"When a court is asked to decide whether a State is required by the Constitution to give each qualified voter the same power in an election open to all, there is no discernible, valid reason why constitutional distinctions should be drawn on the basis of the purpose of the election. If one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator. While there are differences in the powers of different officials, the *crucial consideration is the right of each qualified voter to participate on an equal footing in the election process.* It should be remembered that in cases like this one we are asked by voters to insure that they are given equal treatment, and from their perspective the harm from unequal treatment is the same in any election, regardless of the officials selected.

"If the purpose of a particular election were to be the determining factor in deciding whether voters are entitled to equal voting power, courts would be faced with the difficult job of distinguishing between various elections. We cannot readily perceive judicially manageable standards to aid in such a task. It might be suggested that equal apportionment is required only in 'important' elections, but good judgment and common sense tell us that what might be a vital election to one voter might well be a routine one to another. In some instances the election of a local sheriff may be far more important than the election of a United States Senator. If there is any way of determining the importance of choosing a particular govern-

mental official, we think the decision of the State to select that official by popular vote is a strong enough indication that the choice is an important one. This is so because in our country popular election has traditionally been the method followed when government by the people is most desired.

"It has also been urged that we distinguish for apportionment purposes between elections for 'legislative' officials and those for 'administrative' officers. Such a suggestion would leave courts with an equally unmanageable principle since governmental activities 'cannot easily be classified in the neat categories favored by civics texts,' Avery, supra, at 482, 88 S.Ct. at 1119, and it must also be rejected. We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis which will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials. It is of course possible that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election in compliance with Reynolds, supra, might not be required, but certainly we see nothing in the present case which indicates that the activities of these trustees fit in that category. Education has traditionally been a vital governmental function, and these trustees, whose election the State has opened to all qualified voters, are governmental officials in every relevant sense of that term."

We hold that Subsection 1 of Section 385.280 N.R.S., and Subsections 1 and 2 of Section 385.020 N.R.S., as amended, are unconstitutional. We hold that these subsections and these alone violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The defendants, and in particular the defendant Secretary of State, are permanently enjoined from applying, following, enforcing or giving any effect to the said subsections for the 1970 primary and general elections.

This Court judicially notices that the Nevada legislature is not now in session; that the Governor has in recent months declined to call a special session of the legislature; that the next regular session of the legislature will not meet until January of 1971.

We do not believe that an order directed to the Governor to convene a special session of the legislature for the sole purpose of considering legislation to provide, in a constitutionally permissible manner, for the selection of a State Board of Education to take office in January of 1971, is justified. The convening of a special session, then, remains for his decision, uncoerced by court order.

In absence of legislation providing a constitutionally permissible manner of selection, this Court must, however, provide in some fashion for the selection of the members of the State Board of Education to take office in January 1971.

This Court could devise its own plan for the election in 1970 of members of the State Board of Education by districts. Devising such a plan is a legislative, and not a judicial, function. Furthermore, were we inclined to venture into this "political thicket", which we are not, the record before us is devoid of facts necessary to such a task.

We turn then to the only course of action open to us and direct:

1. Should no new plan be forthcoming from a special legislative session be-

**422**

fore July 1, 1970, the method of election shall be as follows:

(a) That there be nominated and elected at the 1970 primary and general elections, seven members of the State Board of Education. These seven members shall be nominated and elected at large throughout the State of Nevada and all members shall hold office for a term of four years;

(b) Any qualified elector of the State of Nevada, regardless of the county of his residence within the state, shall be eligible to be a candidate for nomination and election as a member of the State Board of Education;

(c) The seven members of the State Board of Education so elected shall take office at the same time as other state officers elected at large at the 1970 general election assume their duties;

(d) Regardless of the date the terms of office expire, the elective and appointive members of the State Board of Education, as presently constituted, shall continue in office only until the seven members to be elected in 1970 take office;

(e) With the exception only of the subsections of Sections 385.280 and 385.020 N.R.S., as amended, found to be unconstitutional, and except as otherwise herein ordered by this Court, all laws of the State of Nevada pertaining to the State Board of Education found in Title 34, Chapter 385, N.R.S., as amended, and all laws governing elections found in Title 24, N.R.S., as amended, shall be applicable to the nomination and election of the seven members of the State Board of Education.

2. This Court retains jurisdiction of this action and over the parties to the same, as well as over the nomination and election of the members of the State Board of Education as herein ordered, reserving jurisdiction to modify this plan at any time deemed appropriate by this Court;

3. This Court also reserves jurisdiction to consider any legislation hereafter duly enacted by the Nevada legislature and approved by the Governor providing for the selection of the members of the State Board of Education, when and if the same shall be formally presented to this Court by the Attorney General.

The facts found herein are deemed findings of fact in this case, and the conclusions of law stated herein shall be deemed conclusions of law in this case. Let judgment be entered accordingly.