**Richard P. ADAMS, Plaintiff,**

v.

**SCHOOL BOARD OF WYOMING VAL-
LEY WEST SCHOOL DISTRICT,
Defendant.**

**Civ. A. No. 71–170.**

United States District Court,
M. D. Pennsylvania.

Oct. 29, 1971.

Michael J. Lewis, Jr., Wilkes-Barre, Pa., for plaintiff.

John W. Bour, Scranton, Pa., for defendant.

OPINION

MUIR, District Judge.

This is a civil rights action brought by a resident taxpayer of the Wyoming Valley West School District seeking injunctive relief with respect to the composition of the Wyoming Valley West School Board. Plaintiff alleges that the District has been divided into nine regions, with each region electing one member of the Board, and that the regions are grossly disproportionate in population, thereby depriving him of an equal vote in the election of school directors. On August 16, 1971, 53 F.R.D. 267, this court denied defendant's motion to dismiss the complaint in this action. Having received yesterday the stipulation of testimony which would have been elicited at trial, we are in a position to render a decision before the election of school directors set for November 2, 1971.

In 1967, the Board of School Directors of the Wyoming Valley West School District established nine regions for the election of school directors within the Wyoming Valley West School District. This plan was approved without public objection by the Court of Quarter Sessions of Luzerne County, Pennsylvania, on February 9, 1967. The redistricting and Court approval were pursuant to the Pennsylvania School Reorganization Act of 1963, P.L. 564, § 4, 24 P.S. § 3–303(b):

"The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible

and shall be compatible with the boundaries of election districts."

Plaintiff does not contend that the school district regions are incompatible with election districts. There can be no question that school districts, like other state or local governmental units, must be established in such a fashion as to "insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." Hadley v. Junior College District of Metropolitan Kansas City, 397 U.S. 50, 56, 90 S.Ct. 791, 795, 25 L.Ed.2d 45 (1970). But it is also true that "mathematical exactitude is not required." 397 U.S. at 58, 90 S.Ct. 791. As the majority said in Reynolds v. Sims, 377 U.S. 533, 578–579, 84 S.Ct. 1362, 1390, 12 L. Ed.2d 506 (1964):

> "Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering."

Thus, the statutory requirement of compatibility with election districts does not in my view contravene the constitutional command of the Fourteenth Amendment's equal protection clause as interpreted by the United States Supreme Court. Furthermore, permitting some variation in the voting population of school district regions to allow conformity with election districts makes good sense when the administrative inconvenience of requiring separately prepared election rolls and ballots for school district elections is considered. It is for this reason that Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4th Cir. 1965), cited by the plaintiff, is not

convincing here. The Court there held that 1.37 was not an allowable population variance for councilmanic units. The redistricting required to approach equality for such units is far simpler than that for school districts which are, for good reason, required to be compatible with election districts.

The question remains whether the existing population variation of the regions within this school district is so gross that compatibility cannot be a sufficient justification. Each of the nine regions here consists either of a whole borough or of groups of wards within a borough. The ratio of the population of the largest to the smallest region is 1.-407. The voter registration ratio between these regions is 1.480[1].

Plaintiff has not shown that these ratios can be decreased while maintaining compatibility with existing election districts. Nor has plaintiff shown that redrawing ward lines within certain boroughs would cure the variation in the population of the school district regions without destroying what may perhaps be a reasonable basis for the existing ward lines. On the record in this case, it is my view that the existing population variations of 1 to 1.4 are small enough to be justified by the legitimate pursuit of compatibility of school district regions with election districts. Thus, these variations are not the result of an arbitrary and capricious classification which would violate the equal protection clause of the Fourteenth Amendment.

This opinion constitutes the findings of fact and conclusions of law of the Court.

An appropriate order denying plaintiff's request for relief will be entered.

I.

| | Population at Reorganization | Population 1971 | Voter Registration 1971 |
|---|---|---|---|
| Region 1 | 8,162 | 7,152 * | 3,921 * |
| 2 | 6,740 | 5,883 * | 3,047 * |
| 3 | 6,770 | 6,071 * | 3,415 * |
| 4 | 6,234 | 5,082 | 2,649 |
| 5 | 6,130 | 6,159 | 3,208 |
| 6 | 7,776 | 7,094 | 3,611 |
| 7 | 7,218 | 6,114 | 3,266 |
| 8 | 7,418 | 6,786 | 3,467 |
| 9 | 7,672 | 6,686 | 3,292 |

(* Best Estimate)