Peter L. POWERS et al., Plaintiffs,

v.

**MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 1 et al., Defendants.**

**Civ. No. 1897 N.D.**

United States District Court, D. Maine, N. D.
May 25, 1973.

Philip P. Parent, Van Buren, Me., for all plaintiffs.

Philip C. Roberts, Ft. Fairfield, Me., for defendants Flora and Freeman.

John E. Welch, Caribou, Me., for Marston and Duncan.

Hugo A. Olore, Jr., Presque Isle, Me., for B. Brown, F. Lunt, R. Lamoreau, A. Reynolds, B. Tompkins, A. Christie and H. Stetson.

Gene Carter, Richard J. Relyea, III, Bangor, Me., for all other defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Plaintiffs in this action are citizens, residents, taxpayers and voters of the city of Presque Isle, one of five Maine municipalities which have combined to form Maine School Administrative District No. 1. They challenge on equal protection grounds the allocation of seats on the board of directors of the District and seek reapportionment of the board by application of the "one person, one vote" principle of Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Avery v. Midland County, 390

U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed. 45 (1970); and related cases. Declaratory and injunctive relief is sought. In addition to the District itself, defendants include the present members of its board of directors, the superintendent of schools of the District, the municipal officers of the constituent municipalities of the District, and the members of the reapportionment committee of the District, all of whom are sued individually and in their official capacities.

The Maine Legislature, by enacting Chapter 9 of Title 20, M.R.S.A. (20 M.R. S.A. §§ 211–226, 301–307 (1964), as amended, (Supp.1972)), has provided for the formation of school administrative districts. Under that law, any two or more municipalities in the State may form a school administrative district pursuant to "articles of district formation" which have been approved by the State Board of Education and a majority of the voters in each municipality. 20 M.R.S.A. § 215. Among many things, the articles are to provide for a "fair and equitable" allocation of the directors of the district among its participating municipalities, which allocation must have been agreed upon in advance by two-thirds of those present and voting at a joint meeting of municipal officers and school committee members. 20 M.R.S.A. § 215(3). It is required that the board of directors shall consist of a minimum of five members and that each municipality must have at least one director. 20 M.R.S.A. § 301. The State law also provides for the admission of additional members to an existing administrative district by the affirmative vote of a majority of the voters in the district as a whole and a majority of the voters in each municipality desiring to join. 20 M.R.S.A. § 222. After formation of a district, reapportionment of its board can be accomplished only by the affirmative vote of two-thirds of those present and voting at a specially called meeting of a reapportionment committee, comprised of the district directors, the municipal offi-

cers and two at-large representatives from each municipality. 20 M.R.S.A. § 303. Dissolution of a district is permitted, if it has no outstanding indebtedness, upon a petition approved by two-thirds of the voters in the municipality desiring to withdraw, and in accordance with an agreement for dissolution prepared by the State Board of Education and approved by a majority of the voters in the district as a whole. 20 M.R. S.A. § 222.

Maine School Administrative District No. 1 was formed in 1958 by the city of Presque Isle and the town of Westfield. The towns of Castle Hill, Chapman and Mapleton joined the District in 1961 to give it its present composition. As of the 1970 federal census, the populations of these municipalities, substantially the same as they were in 1961, were: Presque Isle, 11,452; Mapleton, 1,598; Castle Hill, 519; Westfield, 517; and Chapman, 328; a total of 14,414. Since 1961, the board of directors of the District has consisted of 17 members, of whom nine have been elected from Presque Isle; three from Mapleton; two each from Castle Hill and Westfield; and one from Chapman. As thus constituted, Presque Isle has one board member for each 1,272 citizens; Mapleton has one board member for each 532 citizens; Castle Hill has one board member for each 259 citizens; Westfield has one board member for each 258 citizens; and Chapman has one board member for each 328 citizens. On May 5, 1971, a reapportionment committee, convened pursuant to 20 M.R.S.A. § 303, rejected the petition of over 600 citizens of the District for reapportionment of the District board. Shortly thereafter, the present suit was filed.

Plaintiffs argue, relying on Hadley v. Junior College District, *supra*, that the one person, one vote principle is applicable to the defendant District and that the distribution of directors among the five constituent municipalities constitutes a clear violation of the principle, thereby resulting in a denial of equal protection to the voters of Presque Isle,

as prohibited by the Fourteenth Amendment to the Federal Constitution. The Court agrees on all points.

█ It is, first of all, quite apparent that the one person, one vote principle applies to the election of the members of the board of a local school district. Hadley v. Junior College District, *supra,* forecloses any argument to the contrary. *Cf.* Avery v. Midland County, *supra.* In *Hadley,* the Supreme Court applied the principle to the election of trustees of the Junior College District of Metropolitan Kansas City, stating broadly:

> If one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator.
>
> \*　\*　\*　\*　\*　\*
>
> We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials. 397 U.S. at 55, 56, 90 S.Ct. at 794, 795.

█ In light of *Hadley,* there can be no serious question but that the board of the defendant District exercises the requisite governmental functions, requiring application of the one person, one vote principle. Under various provisions of Chapter 9, the directors of a Maine school administrative district are authorized to require the assessment of taxes by the member municipalities (20 M.R.S.A. § 305); to issue bonds with the approval of a majority of the voters of the district as a whole and to borrow short-term funds without such approval (20 M.R.S.A. § 304); to employ and discharge teachers (20 M.R.S.A. § 224); to own and administer educational property and funds (20 M.R.S.A. §§ 217, 218) and to dispose of such property under certain conditions (20 M.R.S.A. § 307); to establish satisfactory school programs (20 M.R.S.A. § 211); and, in general, to conduct and manage all public schools within the district (20 M.R.S.A. § 224). In *Hadley,* the Supreme Court found that school district trustees exercising equivalent powers performed "important governmental functions," 397 U.S. at 53–54, 90 S.Ct. at 794, and held that "[e]ducation has traditionally been a vital governmental function and these trustees, whose election the State has opened to all qualified voters, are governmental officials in every relevant sense of that term." *Id.* at 56, 90 S.Ct. at 795. And more recently, Circuit Judge Oakes, sitting as a district judge in Vermont, relying on Hadley, invalidated the apportionment of a high school district which had been created under legislation noticeably similar to that of Maine, holding that "there can be no serious question but that the District school board exercises general governmental functions in the performance of its duties." Leopold v. Young, 340 F.Supp. 1014, 1017 (D.Vt. 1972). Several other district courts, both before and since *Hadley,* have reached the same conclusion. LoFrisco v. Schaffer, 341 F.Supp. 743, 747 (D.Conn.1972); Adams v. School Board of Wyoming Valley, 332 F.Supp. 982 (M.D.Pa.1971); Dameron v. Tangipahoa Parish Police Jury, 315 F.Supp. 137 (E.D.La.1970); Oliver v. Board of Education of the City of New York, 306 F.Supp. 1286 (S.D. N.Y.1969). *Cf.* Fahey v. Laxalt, 313 F. Supp. 417 (D.Nev.1970).

Defendants, however, urge that notwithstanding the governmental character of the functions performed by the District directors, *Hadley* is distinguishable from the present case in one crucial respect, and they accordingly urge the

Court to follow the reasoning of the Maine Supreme Judicial Court in Cohen v. Hoye, 280 A.2d 778 (Me.1971), rejecting an equal protection attack upon the apportionment of the directors of a Maine school administrative district. The distinction on which they rest is that in *Hadley* the apportionment of directors was established by the statute authorizing the creation of the district, while under the Maine (and Vermont) legislation, the municipalities are free to establish any apportionment they choose, so long as it is "fair and equitable" and each municipality is allocated at least one director. Thus, in *Hadley*, a municipality considering membership in the district had only the choice of joining on a malapportioned basis or of staying out completely, whereas a corresponding municipality in Maine (or in Vermont) could, for example, agree to join on a malapportioned basis in exchange for concessions on other points in the terms of consolidation.

This element of voluntariness forms the basis of the Maine court's holding in *Cohen* that a malapportioned school district comprised of the towns of Kennebunk and Kennebunkport comported with constitutional requirements. Relying on language in *Hadley* that a claim of unconstitutionality fails "if the deviation from equal apportionment presented . . . resulted from a plan that did not contain a built-in bias in favor of small districts, but rather from the inherent mathematical complications in equally apportioning a small number of trustees among a limited number of component districts," 397 U.S. at 58, 90 S.Ct. at 796, the court in *Cohen* held that inasmuch as the malapportionment in question did not result from "systematic discrimination," "built-in" to the Maine statute, but rather resulted from negotiations freely entered into by the two towns, it was constitutionally sound. 280 A.2d at 783–784.

■ However, as the Supreme Court observed in Abate v. Mundt, 403 U.S. 182, 186, 91 S.Ct. 1904, 1907, 29 L.Ed.2d

399 (1971), "[t]he mere absence of a built-in bias is not, of course, justification for a departure from population equality." And, as Judge Oakes pointed out in *Leopold*, the Supreme Court has squarely rejected the proposition that the constitutional right to an undiluted vote can be bargained or voted away. Thus, in Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964), the Court stated:

> An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. Manifestly, the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act. As stated by this Court in West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638 [63 S.Ct. 1178, 1185, 87 L.Ed. 1628], "One's right to life, liberty, and property . . . and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be. We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the scheme adopted fails to satisfy the basic requirements of the Equal Protection Clause . . . . 377 U.S. at 736–737, 84 S.Ct. at 1473–1474. (footnotes omitted).

And again in Avery v. Midland County, *supra*, the Court reaffirmed this view:

> Inequitable apportionment of local governing bodies offends the Constitution even if adopted by a properly apportioned legislature representing the

majority of the State's citizens. The majority of a State—by constitutional provision, by referendum, or through accurately apportioned representatives —can no more place a minority in oversize districts without depriving that minority of equal protection of the laws than they can deprive the minority of the ballot altogether, or impose upon them a tax rate in excess of that to be paid by equally situated members of the majority. Government—National, State, and local— must grant to each citizen the equal protection of its laws, which includes an equal opportunity to influence the election of lawmakers, no matter how large the majority wishing to deprive other citizens of equal treatment or how small the minority who object to their mistreatment. Lucas v. Colorado General Assembly, 377 U.S. 713, [84 S.Ct. 1459, 12 L.Ed.2d 632] (1964), stands as a square adjudication by this Court of these principles. 390 U.S. at 481–482, n. 6, 88 S.Ct. at 1118–1119.

See also Hadley v. Junior College District, *supra*, 397 U.S. at 65, 90 S.Ct. at 800 (Harlan, J., dissenting)[1].

It is thus clear that the fact that Presque Isle voluntarily joined the defendant District cannot validate the District's malapportionment. The Supreme Court has consistently refused to permit a majority to debase the vote of a minority, and in this case the majority of the voters in Presque Isle who agreed to the dilution of their votes in the election of District directors cannot constitutionally deprive the minority of Presque Isle voters of their right to full representation on the District board.

There is no question but that the board of directors of the defendant District is grossly malapportioned. Presque Isle, with 79% of the District population, elects only 53% of the board. The vote of a Presque Isle citizen is given only one-fifth of the weight of the vote of a citizen of Castle Hill or Westfield. A 17-member board allocated among a total District population of 14,414 would produce an ideal ratio of one board member for each 848 citizens. As the board is presently constituted, Presque Isle has one board member for each 1,272 citizens, which results in an underrepresentation of exactly 50%, while the other four towns enjoy ratios of one member to 532 citizens in Mapleton, an overrepresentation of 37%, of one member to 328 citizens in Chapman, an overrepresentation of 61%, and of one member to 259 and 258 respectively in Castle Hill and Westfield, an overrepresentation in each instance of almost 70%. The resulting deviation from population equality, 120%, is far in excess of the maximum of 16.4% so far permitted by the Supreme Court. Mahan v. Howell, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (U.S. 1973). *See also* Abate v. Mundt, *supra*.

Defendants point out that strict application of the one person, one vote principle in this case, when coupled with the statutory requirement of a minimum of one director per municipality, will require the creation of a board of unwieldy size. They observe that so long as Chapman, the smallest town, must have one director, the ideal ratio for the District would have to be 328 (the population of Chapman) to one, which, in return, would require the allocation of 35 directors to Presque Isle, five to Mapleton, and two each to Castle Hill and Westfield, for a total board of 45 members. This may be true, but if so, it is a result which is compelled by the Maine legislation and which this Court is powerless to rectify. In imposing the requirement of at least one director for each municipality, the Legislature may

---

I. " . . . [B]ut as I read the Court's opinion today, it would strike down the apportionment in this case even if the terms had resulted from an entirely free agreement among the eight school districts."

well have been prompted by "legitimate considerations incident to the effectuation of a rational state policy," Reynolds v. Sims, *supra*, 377 U.S. at 579, 84 S.Ct. at 1391. Defendants correctly assert that in applying the one person, one vote principle, "mathematical exactitude" is not required, *id.* at 577, 84 S.Ct. 1362; Hadley v. Junior College District, *supra*, 397 U.S. at 58, 90 S.Ct. 791, and a desire to maintain the integrity of political subdivisions may justify limited deviations from strict population equality. Reynolds v. Sims, *supra*, 377 U.S. at 580–581, 84 S.Ct. 1362; Abate v. Mundt, *supra*, 403 U.S. at 185, 91 S.Ct. 1904; Mahan v. Howell, *supra*, 410 U.S. 315, 93 S.Ct. 979. But the discrepancies must be "within tolerable limits," and "a State's policy urged in justification of disparity in district population, however rational, cannot constitutionally be permitted to emasculate the goal of substantial equality." *Indem.*; Abate v. Mundt, *supra*, 403 U.S. at 187, 91 S.Ct. 1904; Swann v. Adams, 385 U.S. 440, 444, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967). The vast imbalance of voting rights disclosed by the present record simply cannot pass constitutional muster. *Cf.* Swann v. Adams, *supra*; Kilgarlin v. Hill, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967).

For the reasons stated, the Court holds that the one person, one vote principle is applicable to the defendant District and that the allocation of directors among the five municipalities of the District clearly violates that principle and denies to plaintiffs the Equal Protection of the Laws guaranteed to them by the Fourteenth Amendment to the United States Constitution.

Accordingly, it is ordered that defendants submit to this Court within 90 days a plan for the reapportionment of the board of directors of Maine School Administrative District No. 1 consistent with the views here stated. The Court will retain jurisdiction pending the submission of such a plan.