Barbara LEOPOLD et al.

v.

Richard YOUNG et al.

Civ. A. No. 6326.

United States District Court, D. Vermont.

March 28, 1972.

Alden Bryan, Wilson, Curtis, Bryan, Quinn & Jenkins, Burlington, Vt., for plaintiffs.

Richard Spokes, Ewing & Spokes, Burlington, Vt., for defendants Richard Young, George Schiavone, Clark Hinsdale, Jr., James Brennan, Jackson J. Clemmons, Marie Copp, John Sickman, Norman Van Gulden, and Lee Miner.

Philip Saxer, Gravel & Shea, Burlington, Vt., for defendants James Ogden, Harry Preston, Charles Lotz, Priscilla Spear, Marilyn Palmer, Stanley Bissonette, Henry Carse and Andrew Gover.

John Dinse, Wick, Dinse & Allen, Burlington, Vt., for defendants Barbara Snelling, Harry Clayton, Gary Pittman, Irving Meeker, Margaret Amidon, Edna Cole, Oscar S. Peterson, Donald Foss, John Bushey, Raymond Fontaine, Nelson A. Lefebvre and Harold Lyon.

## OPINION AND ORDER

OAKES, Circuit Judge.[*]

■ In this action, the plaintiffs, citizens and taxpayers of the towns of Shelburne and Williston, Vermont, seek to have the school board of the Champlain Valley Union High School District reapportioned. Although the plaintiffs originally sought to maintain this suit as a class action, they have withdrawn their class action allegations. Jurisdiction is based upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. See, e. g., Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962).[1]

■■ This is not a proper case for abstention. The applicable Vermont statutes are not ambiguous, and all parties agree that they are not unconstitutional on their face; the question is whether they have been unconstitutionally applied. See, e. g., Chemical Specialties Mfrs. Ass'n v. Lowery, 452 F.2d 431 (2d Cir. 1971); C. Wright, Law of Federal Courts § 52 (2d ed. 1970). Nor is this a proper case for a three judge court.[2]

The plaintiffs have moved for summary judgment. We have concluded that the pleadings "show that there is no genuine issue as to any material fact" and that the plaintiff "is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

### I. Factual Setting and the Applicable Statutes

The Champlain Valley Union High School District ("District") was formed in 1962 and consists of the Vermont towns of Hinesburg, Charlotte, Williston, and Shelburne. As of the 1970 federal census, the population of Hinesburg was 1,775; of Charlotte, 1,802; of Williston, 3,187; and of Shelburne, 3,728. This represents 16.9 per cent, 17.2 per cent, 30.4 per cent and 35.5 per cent of the District, respectively. It may be noted parenthetically that the population disparities were, in all probability, not as great in 1962 when the District was formed, since the four towns had at the time of the 1960 census populations of

---

[*] United States Circuit Judge Second Circuit Court of Appeals, sitting by designation as District Judge.

1. Defendant Hinesburg and Charlotte school board members originally contended that this Court lacks subject matter jurisdiction because the action of which the plaintiffs complain was not "under color of" state law. This contention, which was based on the fact that the applicable Vermont statute permits but do not require a malapportioned school board, has now been abandoned. The defendants apparently now recognize that action can be under color of state law even if the specific conduct complained of is not authorized by state law, or even if it is proscribed

thereby. See, e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Valle v. Stengel, 176 F.2d 697 (3d Cir. 1949); Westminster School Dist. of Orange County v. Mendez, 161 F.2d 774 (9th Cir. 1947).

2. A three-judge court pursuant to 28 U.S.C. § 2281 has not been requested and is not required to determine the issues in this case because the plaintiffs do not seek to enjoin a state officer, and, although a state statute is involved in the action, do not seek to enjoin the operation of "a state statute of general and statewide application." Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

1,180; 1,271; 1,484 and 1,805, respectively.[3] Bureau of the Census, U. S. Dep't of Commerce, U.S. Census of Population: 1960 (Final Rept. PC(1)–47B). At the time this suit was brought, each town was represented by two elected members of the Board of Directors ("school board") of the District. In March, 1971, prior to the date of this suit, the voters of the four member towns voted to increase the size of the school board from eight to twelve members, each town to have one additional representative, and this expansion of the school board has been carried out.[4] On May 24, 1971, approximately two months later, the voters of the four member towns voted not to reapportion the school board on the basis of the population of each of the four member towns.

According to the statutes in force in 1962 when the District was formed, a prerequisite for the formation of a union school district was approval of a majority of the voters of each town school district to be included in the union district and approval of the state board of education. 16 Vt.Stat.Ann. §§ 612(a), (b) (1958) (now superseded by 16 Vt. Stat.Ann. §§ 706c, 706d (Supp.1971)). The total number of school directors and the number from each member district were to "be agreed upon by the several member districts" prior to the organization meeting of the union district. In the absence of such agreement, the apportionment of representation was to be set by those voters present at the organization meeting, but at not less than three nor more than eleven directors, including at least one from each member district. 16 Vt.Stat.Ann. § 614(b) (1958) (now superseded by 16 Vt.Stat. Ann. § 706b(9)).

The statutes presently in effect state that "any union school district established pursuant to the provisions of any prior statute shall be governed in all respects by the provisions of this subchapter." 16 Vt.Stat.Ann. § 721b (Supp. 1971). The present statutes further provide that "the method of apportioning the representation which each proposed member district shall have on the union school board" is to be determined by a planning committee with the approval of the state board of education and a majority of the voters of each town. 16 Vt.Stat.Ann. §§ 706b(9), 706c, 706d, 706f (Supp.1971). All member towns are represented on the planning committee proportionately to their average daily student enrollment. 16 Vt.Stat.Ann. § 706 (Supp.1971). Each member town is entitled to at least one school board member as its representative, and the school board cannot have more than eighteen members. *Id.* § 706b(9). The method of apportioning school board members can be changed at any "special or annual member district meeting." Results of the vote are compiled for each member town, but an affirmative vote of a majority of all those voting in the union district is necessary for the change to become effective. 16 Vt.Stat.Ann. § 706n(a) (Supp.1971).

## II. *The Merits*

The plaintiffs rely on the Supreme Court's decision in Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). In *Hadley*, residents of the Kansas City School District, one of eight separate districts forming the Junior College District of Metropolitan Kansas City, claimed that their right to vote for trustees of the Junior

---

3. Thus, only two years before the District was formed, there was very little disparity in the populations of Hinesburg, Charlotte and Williston—they each had 20.6, 22.1 and 25.8 per cent, respectively, of the total population of the four towns. On a four man board, therefore, they would have each been entitled to one member on a "one-man-one-vote" calculation, as would Shelburne with 31.4 per cent,

while on a five man board Shelburne might have been entitled to two directors.

4. Plaintiffs' request for a temporary restraining order against an increase in the size of the school board was denied by the late Chief Judge Bernard J. Leddy of this Court on June 30, 1971, on the grounds that irreparable injury had not been demonstrated.

College District was being unconstitutionally diluted. The Supreme Court held that the "one-man-one-vote" principle was applicable to the school board in question, stating:

> If one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator.
>
> \* \* \* \* \* \*
>
> We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

397 U.S. at 55, 56, 90 S.Ct. at 794, 795.

■ The school board members of the Champlain Valley Union High School District are elected by popular vote, but, as the school board is presently constituted, the towns of Williston and Shelburne have unequal representation on the school board with reference to the number of residents represented by each school board member. In light of *Hadley* and the applicable Vermont statutes, there can be no serious question but that the District school board exercises general governmental functions in the performance of its duties. The powers of the school board include the determination and administration of the educational policies of the school district and the exercise of the broad general powers given to a legislative branch of a municipality. 16 Vt.Stat.Ann. §§ 563, 706q(a) (Supp.1971). Cf. Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) (similar powers of county commissioners). *Hadley*, therefore, is apposite, if not controlling.

*Hadley* does, however, differ from the case at bar in several respects. In *Hadley* a state statute required the malapportionment of consolidated school districts. Here the state statute does not require malapportionment, but only permits towns to agree among themselves on the terms under which they will consolidate, including the apportionment of school board members. 16 Vt.Stat.Ann. § 614(b) (1958), as amended, § 706b(9) (Supp.1971). Thus the Kansas City School District in *Hadley* had only two alternatives: it could join the consolidated Junior College District on a malapportioned basis or it could stay out of the consolidated district completely.[5] The choice permitted to the would-be member town districts by statute here was somewhat broader: when the District was formed, Shelburne and Williston could have insisted upon representation proportional to their population or could have bargained for concessions of another nature, such as the allocation of capital and operating expenses [16 Vt.Stat.Ann. § 641(a) (1958) (now superseded by 16 Vt.Stat.Ann. § 706b(8) (Supp.1971))], in exchange for equal representation of the four towns. This case also differs from *Hadley* in that the school board can be reapportioned by the voters, although that requires approval by a majority of *all the voters* of the District. 16 Vt.Stat.Ann. § 706n(a) (Supp.1971). Thus the voters of Shelburne and Williston could alone force reapportionment, assuming that the proportion of eligible voters is even roughly approximate to the population of each town. A majority of the District's voters rejected reapportionment, however, in the May, 1971, referendum.

Mr. Justice Harlan, dissenting in *Hadley*, with the concurrence of Chief Justice Burger and Mr. Justice Stewart, thought that factors such as these would not alter the *Hadley* result. Discussing

---

5. See Note, 16 Vill.L.Rev. 158, 170–171 (1970).

hypothetically the case with which we are now faced, namely the case in which the legislature has "left the school districts free to negotiate their own apportionment terms, rather than imposing a uniform scale," Mr. Justice Harlan stated:

> [B]ut as I read the Court's opinion today, it would strike down the apportionment in this case even if the terms had resulted from an entirely free agreement among the eight school districts.

*397 U.S. at 65, 90 S.Ct. at 800.*

Whether or not Mr. Justice Harlan correctly concluded that *Hadley* is indistinguishable from the case at bar, other Supreme Court decisions indicate that the fact that the larger towns voluntarily entered into the union district in the first instance cannot serve as a permissible ground for the District's malapportionment. It may be argued that the majority of the voters in Shelburne and Williston have in a sense [6] voluntarily agreed to have their town's votes diluted in elections for the District's school board in return for the towns of Hinesburg and Charlotte agreeing to enter into or stay in the District. The Supreme Court, however, has refused to permit a majority to dilute the vote of a minority—in this case the minority consisting of those Shelburne and Williston residents who want full representation. Thus, the Court stated in Lucas v. Forty-Fourth General Assembly of Colo.,

377 U.S. 713, 736–737, 84 S.Ct. 1459, 1473–1474, 12 L.Ed.2d 632 (1964) (footnotes omitted):

> An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. Manifestly, the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act. As stated by this Court in West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638 [63 S.Ct. 1178, 1185, 87 L.Ed. 1628,] "One's right to life, liberty, and property . . . and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be. We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the scheme adopted fails to satisfy the basic requirements of the Equal Protection Clause . . . .

Similarly, in Avery v. Midland County, 390 U.S. 474, 481–482, 88 S.Ct. 1114,

6. Commenting upon the Kansas statute, Mr. Justice Harlan said:
> The features of this system are surely sensibly designed to facilitate creation of new educational bodies while guaranteeing to small school districts that they will not be entirely swallowed up by a large partner. The small districts are free to avoid alliance with a highly populated neighbor, if they prefer to link with enough others of their own size to provide a viable base for a junior college [or union high school].

*397 U.S. at 64, 90 S.Ct. at 799.* But how free the choice of a given town district may be, however large or small the town, is a matter for conjecture. The town's own school buildings or equipment may be obsolete, its finances insufficient to permit engaging an adequate faculty or offering a broad or quality curriculum, or its tax base for one reason or another may be eroded. Thus, to some extent the trend toward formation of union districts may have been in a real sense involuntary although some freedom of choice as to which union district to join has no doubt existed in many cases, at least for some small towns accessible to two or more possible union districts. Generally speaking, for a town not to join any union school district—at least at the high school level—has been very difficult in Vermont.

1118–1119, 20 L.Ed.2d 45 n. 6 (1968), the Supreme Court reiterated this view:

Inequitable apportionment of local governing bodies offends the Constitution even if adopted by a properly apportioned legislature representing the majority of the State's citizens. The majority of a State—by constitutional provision, by referendum, or through accurately apportioned representatives —can no more place a minority in oversize districts without depriving that minority of equal protection of the laws than they can deprive the minority of the ballot altogether, or impose upon them a tax rate in excess of that to be paid by equally situated members of the majority. Government—National, State, and local— must grant to each citizen the equal protection of its laws, which includes an equal opportunity to influence the election of lawmakers, no matter how large the majority wishing to deprive other citizens of equal treatment or how small the minority who object to their mistreatment. Lucas v. Forty-Fourth Colorado General Assembly [of State of Colo.,] 377 U.S. 713, [84 S.Ct. 1459, 12 L.Ed.2d 632] (1964), stands as a square adjudication by this Court of these principles.

Since school boards of union school districts perform governmental functions and since those Shelburne and Williston residents who desire full representation on the District school board cannot be deprived of their right to an equal voice in the operation of the District, there can be no constitutionally permissible justification for the malapportionment of the Champlain Valley Union High School District. It may be true that equal representation of the four towns constituting the District induced the smaller towns to participate in the District in the first instance, and may serve some useful purposes. Nevertheless, the Supreme Court cases require that legitimate town interests be safeguarded in some way other than impingement on constitutionally protected rights by way of gross malapportionment. Moreover, these legitimate interests may to some extent be reflected when the "one-man-one-vote" principle is applied in particular cases, since the Supreme Court has only recently taken the view "that the particular circumstances and need of a local community as a whole may sometimes justify departures from strict equality." Abate v. Mundt, 403 U.S. 182, 185, 91 S.Ct. 1904, 1907, 29 L. Ed.2d 399 (1971). Here, however, there should be little problem since the proportions involved bear such a clear ratio to one another.[7]

Accordingly, it is hereby ordered:

That within thirty days, unless this period is extended by further order of this Court upon application of a party, the defendants submit to this Court a plan whereby the Board of Directors of the Champlain Valley Union High School District may be reapportioned in accordance with the principles of equal protection of the laws enunciated herein. This Court will retain jurisdiction pending the submission of a plan for proper reapportionment.

---

7. Needless to say, nothing herein is intended to pass upon the question whether equal protection requires equality of taxation among the towns in the particular District, or throughout the entire state. That may be another case, for another day. Cf. Rodriguez v. San Antonio Independent School Dist., 337 F.Supp. 280 (W.D.Tex.1971) (three judge court); VanDusartz v. Hatfield, 334 F.Supp. 870 (D.Minn.1971); Serrano v. Priest, 5 Cal. 3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971).