John E. BAKER and Geraldine S. George, Appellees,

v.

REGIONAL HIGH SCHOOL DISTRICT NO. 5 et al., Appellants.

Joseph M. SCOTT, Sr., Appellee,

v.

NONNEWAUG REGIONAL SCHOOL DISTRICT NO. 14 et al., Appellants.

Nos. 845, 898, 899, 921 and 922, Dockets 75–7001, 75–7009, 75–7015, 75–7039 and 75–7040.

United States Court of Appeals, Second Circuit.

Argued June 6, 1975.

Decided July 23, 1975.

Certiorari Denied Dec. 1, 1975. See 96 S.Ct. 422.

S. Robert Jelley, Wiggin & Dana, New Haven, Conn. (J. Michael Eisner, New Haven, Conn., of counsel), for appellant School Board No. 15.

Gerald P. Dwyer, Gormley & Dwyer, New Haven, Conn., for appellants Benedict and Svirsky.

William J. Cousins, New Haven, Conn., for appellants Berry and Harmon.

Thomas N. Sullivan, Vause & Sullivan, Hartford, Conn., for appellants School Districts Nos. 14 and 15.

Andrew G. Messina, Jr., O'Malley, Deneen, Messina & Oswecki, Windsor, Conn. (Donald J. Deneen, Windsor, Conn., of counsel), for appellant Town of Bethlehem.

Ralph G. Elliot, Alcorn, Bakewell & Smith, Hartford, Conn., for Baker appellees and for Town of New Hartford, Conn., amicus curiae.

Carl R. Burns, Rowayton, Conn., for appellee Scott.

Before SMITH, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

At issue in this appeal is the applicability of one person-one vote principles (*Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1632, 12 L.Ed.2d 506 (1964), and *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964)) to the election of school board members in two Connecticut regional school districts.[1]

1. A number of other districts throughout Connecticut will presumably be affected by this decision since most, although not all, of Connecticut's regional boards are not apportioned

The districts in question are each comprised of towns with substantial population differences, but, as presently organized, each participating town has an *equal* number of elected representatives serving on the regional school board and voting with equal weight. The United States District Court for the District of Connecticut, Jon O. Newman, *Judge,* relying on *Hadley v. Junior College District,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (trustees of a junior college school district performing governmental functions must be elected in accordance with one person-one vote standards); *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) (applying one person-one vote standards to the election of county officials); *Rosenthal v. Board of Education of Central High School District # 3,* 497 F.2d 726 (2d Cir. 1974) (finding a substantial federal question presented by a requested application of one person-one vote principles to an elected school board which had the power to issue bonds and propose taxes); and *Leopold v. Young,* 340 F.Supp. 1014 (D.Vt.1972) (applying one person-one vote standards to a school board with substantial public functions), held, on motion for summary judgment, that the school boards in question performed a range of governmental activities sufficiently extensive to require the application of one person-one vote principles.[2] We affirm.[3]

The facts presented by these two consolidated appeals are the same in all significant aspects. The school district in *Scott,* Connecticut Regional District No. 14 (Nonnewaug), is comprised of two towns, Woodbury (population 5,869) and Bethlehem (population 1,923). As of May, 1973, 1,887 pupils were attending the school district with 1,385 from Woodbury and 492 from Bethlehem. For each of the three years ending with 1973–74, Woodbury contributed to the regional district budget in an amount equal to two and one-half times the amount contributed by Bethlehem. Each of the towns, however, is equally represented on the regional school board by four members.

The school district in *Baker* is comprised of three towns, Bethany (population 3,857), Woodbridge (population 7,673), and Orange (population 13,524). The average[4] number of pupils in the district is 3,377, with 543 pupils from Bethany, 998 from Woodbridge and 1,835 from Orange. Orange contributed in 1972–73 55.04 per cent of the total school budget, with Bethany's share amounting to 15.62 per cent and Woodbridge's 29.34 per cent. However, each of the three towns is equally represented on the regional board by three members. In both districts, the members of the boards are selected through an elective process.[5]

Plaintiffs-appellees in both *Scott* and *Baker* are residents, taxpayers and electors of Woodbury and Orange respectively,[6] who claim that the present apportionment on their regional boards of

on the basis of one person-one vote. The statutes under which regional school districts were created did not require malapportionment, but permitted towns to agree among themselves on the terms of their consolidation.

2. In fashioning a remedy for these constitutional violations, Judge Newman, whose opinion is unpublished, granted declaratory relief only. His denial of injunctive relief was premised on his unwillingness "to disrupt ongoing educational activities pending legislative action." In response to Judge Newman's decision, we are advised, the Connecticut General Assembly has enacted contingency legislation which would apply one person-one vote principles to school districts, while providing that towns so inclined may withdraw from regional school districts. (H.R. Bill No. 6596.)

3. Jurisdiction is grounded upon 28 U.S.C. § 1343(3), and injunctive and declaratory relief was sought under 42 U.S.C. § 1983, 28 U.S.C. § 2201. A three-judge court is not required as there is no facial attack on the Connecticut statutes which create regional boards, and any special acts involved relate only to the particular district involved and hence are not of statewide applicability.

4. An average student census was compiled from the actual daily membership as of June, 1973; October, 1973; and February, 1974.

5. See text at note 7 *infra.*

6. The *Baker* appellants maintain that this court's jurisdiction has been improperly invoked through "collusive joinder." Their theory seems to be that voters of the town are not

education dilutes their voting power and deprives them of the equal protection of the law. The critical question on this appeal therefore is whether these school boards are elective bodies performing regulatory functions of a kind that can be characterized as governmental. *Hadley v. Junior College District,* 397 U.S. at 53–54, 90 S.Ct. 791, 25 L.Ed.2d 45. An affirmative answer to this question requires the additional finding that the boards are constructed unconstitutionally, since all parties concede that their members are not elected according to strict one person-one vote principles, nor do they vote in accordance with any kind of weighted formula which would reflect the population differences in the towns they represent.

The towns in *Scott* elect members directly to the school board; the towns in *Baker,* however, maintain that their regional board is not elective in the sense the Supreme Court intended for application of the one person-one vote principle. The essence of this claim is that the board members are "appointed" through a "legislative" town meeting [7] rather than elected through a "popular election." We find no merit to this line of argument. While the forum for selecting board members was a town meeting, any person who was an elector of the town had the right to cast a vote at the meeting, and the majority prevailed. The suggested distinction is one of form, not substance.

On the question whether the board is governmental in character, appellants make much of the powers which the school boards lack. By reading *Hadley v. Junior College District* as narrowly as possible, they maintain that, since the Connecticut regional boards lack the

the real parties in interest here. Fed.R.Civ.P. 17(a). It is, however, the electors whose vote is being diluted and as such their interests are quite properly before the court. This is clearly not a case where collusion has been used to manufacture jurisdiction.

**7.** In the traditional town meeting, a moderator is chosen by the assembled electors of the town, and thereafter the meeting is conducted as if it were a parliamentary body.

powers to levy and collect taxes and to issue bonds, then their powers are not sufficiently broad or general to be governmental. But as Judge Newman recognized in his opinion below, "[t]he proper question is rather whether the power the Boards *do* have, in fulfilling what 'has traditionally been a vital governmental function,' *Hadley v. Junior College District,* 397 U.S. at 56, 90 S.Ct. 791, make it reasonable to describe the board members as 'government officials in every relevant sense of the term.' *Ibid.*"

The powers of Connecticut's regional school districts are detailed in what is now Chapter 164 of the Connecticut General Statutes,[8] with Conn.Gen.Stats. § 10–47 providing as follows:

> Regional boards of education shall have all the powers and duties conferred upon boards of education by the general statutes not inconsistent with the provisions of this part. Such boards may purchase, lease or rent property for school purposes and, as part of the purchase price may assume and agree to pay any bonds or other capital indebtedness issued by a town for any land and buildings so purchased; shall perform all acts required to implement the plan of the committee for the transfer of property from the participating towns to the regional school district and may build, add to or equip schools for the benefit of the towns comprising the district. Such boards may receive gifts of real and personal property for the purposes of the regional school districts . . . .

In the area of school financing, a regional board may authorize bond anticipation notes for periods of up to four years, and may treat the proceeds of the notes as other school districts or municipalities.

**8.** The *Baker* appellants maintain that there are material facts in issue concerning the powers of the boards so as to preclude a summary judgment. Because the regional boards' powers are statutory and are for our purposes unambiguous summary judgment was properly rendered in the present case. *See Leopold v. Young,* 340 F.Supp. at 1015.

Conn.Gen.Stats. § 10–56(c, d). In addition, the board may also borrow money for periods up to five years. Conn.Gen. Stats. § 10–60. While such actions by the board must be *approved* by the voters of the regional district in a referendum, it is or should be clear that this does not substantially undercut the significance of the boards' function. As stated in the amicus brief of the town of New Hartford, "*whether* to propose a bond ordinance, for what *purpose, when,* for *how much,* and in what *form* are all within the exclusive jurisdiction of the regional board." While the voters have the final word, what they ratify or disapprove can be only what the board decides to present to them. *See also Leopold v. Young, supra.*

Similarly, with respect to the budget-making process, the board has the exclusive power to initiate and propose. The voters may choose not to ratify, but it is within the sole power of the board to draw up the budget, and if it is disapproved, the board then decides whether to amend and how to amend. Conn.Gen. Stats. § 10–51.

In addition, the regional school boards hire and fire teachers, supervise and discipline students, and in general manage all of the schools within their district.[9] As such, there can be no question but that the board members

> perform important governmental functions within the districts and . . .
> these powers are general enough and have sufficient impact throughout the district to justify the conclusion that [one person-one vote] should be applied here.

*Hadley v. Junior College District,* 397 U.S. at 53–54, 90 S.Ct. at 794.

With respect to collective bargaining agreements, again the contract is negotiated by the board; a district meeting must ratify the board's action only if the chief executive officer of a constituent town requests that a meeting be called. Conn.Gen.Stats. § 10–153d.

■ The power to tax is not a sine qua non to a determination that a local board serves a governmental function. The regulatory and supervisory powers possessed by the regional boards here at issue are sufficiently broad to be classified as governmental activity. *See generally Powers v. Maine School Administrative District No. 1,* 359 F.Supp. 30 (D.Me.1973); *Leopold v. Young, supra.*[10]

Appellants' last line of argument focuses upon the Supreme Court's decisions in *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), and *Associated Enterprises, Inc. v. Toltec Watershed Improvement District,* 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), to diminish the force of *Hadley.* In *Salyer* and *Toltec* the Court held that one person-one vote principles did not apply to the election of members of the governing board of a California water and a Wyoming watershed district. Since the districts in issue in *Salyer* and *Toltec* had a "special limited purpose" and since the districts' action had a substantially "disproportionate effect . . . on landowners as a group," 410 U.S. at 728, 93 S.Ct. at 1229, 410 U.S. at 744, 93 S.Ct. 1237, it was acceptable for the officers of the district to be elected by weighted vote of the district's landowners. The regional school boards' impact is general and related to all voters of the towns as such. In *Salyer,* the Court was careful to note that it was the land which was being benefited and the landowners only paying the costs; the Court also emphasized that the water district "provides no other general public services *such as schools.*" *Id.* at 728–29, 93

---

9. Nor is this a complete list of the boards' powers and duties. The boards also have duties in connection with school curriculum, transportation and a wide range of support services. In short, this is not a case like *Sailors v. Board of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), where an appointed school board, whose duties were largely administrative, was exempted from the application of one person-one vote principles.

10. Nor does having the power to tax make a given body governmental in nature. *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973).

S.Ct. at 1230 (emphasis added). Here we have school districts in which those towns which are paying the most for the districts' support have to accept a diluted vote [11] in the running of the schools. *Salyer* and *Toltec* are simply not relevant. The boards here are elective bodies serving governmental functions. They must be organized to reflect one person-one vote principles.

Judgment affirmed.

11. It is of no aid to appellants that the manner in which the regional boards were to be organized was voted upon and accepted by a majority of the voters of each of the towns in the district. As the Supreme Court held in *Lucas v. Forty-fourth General Assembly of Colorado,* 377 U.S. 713, 736–37, 84 S.Ct. 1459, 1473, 12 L.Ed.2d 632 (1964):

> An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. Manifestly, the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act.

Nor is the fact that the districts were formed pursuant to agreement of the towns. *See Leopold v. Young, supra.*