**Gerald P. KELLEHER,**
**Plaintiff, Appellant,**

v.

**SOUTHEASTERN REGIONAL VOCATIONAL TECHNICAL HIGH SCHOOL DISTRICT, Defendant, Appellee.**

No. 86–1134.

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1986.

Decided Nov. 26, 1986.

Marjorie Heins with whom John Reinstein, Massachusetts Civil Liberties Union Foundation, Boston, Mass., was on brief, for appellant.

David E. Sullivan, Legal Counsel, Elections Div., Dept. of the State Secretary, on brief, for Michael J. Connolly, Secretary of the Com. of Massachusetts, Boston, Mass., amicus curiae.

Clyde K. Hanyen, with whom Mone and Mathers, P.C., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and COFFIN, Circuit Judge.

WISDOM, Senior Circuit Judge.

This appeal presents the question whether the one person-one vote principle applies to an apportionment scheme approved by a majority of the voters whose votes are diluted under that scheme. The district court ruled that the one person-one vote principle does not apply. We reverse. A majority of voters cannot waive the constitutional right of a minority to an undiluted voting system.

The plaintiff in this action is a citizen of Brockton, Massachusetts. In 1963, Brockton and eight much smaller Massachusetts towns with widely varying populations formed the Southeastern Regional Vocational Technical High School District, the defendant, in accordance with a state statute.[1] The District includes the city of Brockton (population 98,172), and the towns of East Bridgewater (population 9,945), Easton (population 16,623), Foxboro (population 14,148), Mansfield (population 13,453, Norton (population 12,690), Sharon (population 13,601), Stoughton (population 26,710), and West Bridgewater (population 6,359).[2] The District possesses a full range of traditional governmental powers relating to the management of public schools.[3]

The ten-member Regional School District Committee governs the affairs of the District. Under the apportionment scheme proposed by a regional planning board and approved by a majority of the voters in each of the member communities, the citizens of Brockton elect two Committee members and the citizens of each of the eight member towns elect one.

In 1985, the plaintiff, Gerald P. Kelleher, a resident of and voter in Brockton, filed this action alleging that the District's apportionment scheme for Committee member elections violates the one person-one vote principle of the Fourteenth Amendment's equal protection clause[4] in that while Brockton represents almost one-half of the District's population, its citizens elect only 20 percent of the Committee members who govern the District. On a motion for summary judgment, the district court dismissed this suit. The district court ruled the one person-one vote principle is not applicable to the District's apportionment scheme because the voters of each member city or town, including the voters of Brockton whose votes are diluted by the apportionment system, had approved that system by majority vote. The plaintiff appeals.

In *Hadley v. Junior College District,* the Supreme Court ruled that the one person-one vote principle requires "that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions ... each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials".[5] It is beyond question that the one person-one vote principle applies to

---

* Of the Fifth Circuit, sitting by designation.

1. 1963 Mass.Acts c. 489; *see also* Mass.Gen.L. ch. 71, §§ 14–14A.

2. All population figures are taken from 1980 census data.

3. *See generally* 1963 Mass.Acts c. 489, §§ 6–7; Mass.Gen.L. ch. 71, § 16.

4. *See generally Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); *Hadley v. Junior College Dist.,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970).

5. *Hadley,* 397 U.S. at 56, 90 S.Ct. at 795, 25 L.Ed.2d at 50–51.

elections for school board positions.[6] The Committee, exercising the powers of the District, possesses sufficient governmental powers to bring it within the one person-one vote principle.[7]

Brockton accounts for 46 percent of the District's population, but it elects only 20 percent of the Committee's members. Each of Brockton's Committee members represents an average of 49,086 constituents. The West Bridgewater Committee member, however, represents only 6,359 constituents. In other words, the vote of each West Bridgewater citizen is almost eight times more effective in the Committee than that of each citizen of Brockton. There is, of course, a great disparity between the weight of Brockton's vote as against the weight of the vote in each of the member towns. These disparities are sufficient to establish a prima facie equal protection claim.[8]

The District has not argued that any special consideration, such as the need to preserve traditional political subdivisions or to maintain compact and contiguous districts, justifies the disparity in vote strength.[9] Indeed, even if such a justification were presented, the wide differences in voting strength presented in this case go beyond "tolerable limits".[10]

The District argues that the principle of one person-one vote is inapplicable because of the voluntary nature of the association by the nine member communities. The District notes that the terms of the agreement forming the District, including the provisions covering the apportionment of Committee seats, were not legislatively mandated, but rather were selected by a regional planning board after consideration, negotiation, and compromise. After the planning board reached a tentative agreement, it submitted the proposal to the voters. As required for the proposed agreement to take effect, a majority of the voters in each city or town voted in favor of the plan. Indeed, Brockton voters approved the mea-

6. *Hadley,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45.

7. The Committee possesses many of the same powers held by the trustees in *Hadley v. Junior College District.* Compare *Id.* at 53, 90 S.Ct. at 794, 25 L.Ed.2d at 49 ("[T]he trustees can levy and collect taxes, issue bonds with certain restrictions, hire and fire teachers, make contracts, collect fees, supervise and discipline students, pass on petitions to annex school districts, acquire property by condemnation, and in general manage the operations of the junior college....") *with* Mass.Gen.L. ch. 71 § 16; 1963 Mass.Acts, c. 489, §§ 6–7 (The Committee, exercising the powers of the District can: sue and be sued; acquire property; build, operate, and organize schools; incur debt; issue bonds and notes; and assess member municipalities for the District's expenses.). The Committee members clearly "perform important governmental functions within the [District and] these powers are general enough and have sufficient impact throughout the [D]istrict ... that the principle [of one person-one vote] should ... be applied here". *Hadley,* 397 U.S. at 54, 90 S.Ct. at 794, 25 L.Ed.2d at 49; *see also Baker v. Regional High School Dist. No. 5,* 520 F.2d 799, 801–02 (2d Cir.), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Powers v. Maine School Admin. Dist. No. 1,* 359 F.Supp. 30, 33 (D.Me. 1973); *Leopold v. Young,* 340 F.Supp. 1014, 1017 (D.Vt.1972) (Oakes, J.). "If one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator." *Hadley,* 397 U.S. at 55, 90 S.Ct. at 794, 25 L.Ed.2d at 50.

8. *See Hadley,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (60 percent of the district's total school enumeration electing 50 percent of the district's trustees violates one person-one vote principle). The population deviations from average under the instant apportionment scheme range from 131.9 percent above average for Brockton to 70 percent below average for West Bridgewater. These deviations are far beyond any allowable under a *de minimus* exception. *See Brown v. Thomson,* 462 U.S. 835, 842, 103 S.Ct. 2690, 2696, 77 L.Ed.2d 214, 222 (1983); *Connor v. Finch,* 431 U.S. 407, 418, 97 S.Ct. 1828, 1835, 52 L.Ed.2d 465, 476 (1977).

9. *See, e.g., Swann v. Adams,* 385 U.S. 440, 444, 87 S.Ct. 569, 572, 17 L.Ed.2d 501, 504–05 (1967); *Reynolds,* 377 U.S. at 578–79, 84 S.Ct. at 1390–91, 12 L.Ed.2d at 537; *Latino Political Action Committee, Inc. v. City of Boston,* 568 F.Supp. 1012, 1017 (D.Mass.1983).

10. *Mahan v. Howell,* 410 U.S. 315, 329, 93 S.Ct. 979, 987, 35 L.Ed.2d 320, 333 (1973) (16.4 percent maximum deviation "may well approach tolerable limits"); *Brown,* 462 U.S. at 850, 103 S.Ct. at 2700, 77 L.Ed.2d at 226–27 (O'Connor, J., concurring).

sure by a margin in excess of four to one notwithstanding the underrepresentation accorded to Brockton under the agreement. According to the District, that each of the communities knowingly, wilfully, and voluntarily entered into the agreement providing for the contested scheme of apportionment relieves it from complying with the one person-one vote requirement. This argument has a certain superficial appeal, but it is not persuasive.

■ That a majority of the voters, even those whose votes are diluted, approved the apportionment scheme, is irrelevant. As the Supreme Court noted in *Lucas v. Forty-fourth General Assembly of Colorado:*

> An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. Manifestly, the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act. As stated by this Court in *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 638 [63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943)], "One's right to life, liberty, and property ... and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be.[11]

A majority of citizens willing to have their rights diluted cannot deprive the minority of their right to cast an equally weighted vote.[12]

In this case a planning board, rather than the state legislature, negotiated and drafted the agreement of association. We see this fact as having no legal significance. The effects remain the same: similarly situated voters cast ballots of disparate weight.[13]

The District argues that this court's decision in *Burton v. Whittier Regional Vocational Technical School District,*[14] supports its position that the instant apportionment scheme passes constitutional muster. *Burton* is inapposite. In *Burton,* this court upheld an apportionment scheme under which a city representing 41 percent of a school district's population selected only 15 percent of the district's governing board. While *Burton* did involve an apportionment scheme that was negotiated among the member communities—rather than legislatively mandated—and approved by a majority of the citizens of each of the communities, the key to *Burton* was that the representatives to the school district's committee were *appointed* by the local school committee of each community rather than *elected* by the community's voters. In *Burton,* this court relied heavily on *Sailors v. Board of Education* in which the Supreme Court held:

> Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative officers, the principle of "one man, one vote" has no relevancy.[15]

Had the representatives in *Burton* been elected rather than appointed, it is fair to

**11.** 377 U.S. 713, 736–37, 84 S.Ct. 1459, 1473–74, 12 L.Ed.2d 632, 647 (1964) (footnotes omitted).

**12.** *Id.* 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632; *Hadley,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45; *Baker,* 520 F.2d at 803 n. 11; *Powers,* 359 F.Supp. at 35; *Leopold,* 340 F.Supp. at 1018; *Meyer v. Campbell,* 260 Iowa 1346, 152 N.W.2d 617, 620 (1967); *O'Connors v. Helfgott,* 481 A.2d 388, 393–94 (R.I.1984).

**13.** *See Hadley,* 397 U.S. at 65, 90 S.Ct. at 800, 25 L.Ed.2d at 56 (Harlan, J., dissenting) ("[B]ut as I read the Court's opinion today, it would strike down the apportionment in this case even if the terms had resulted from an entirely free agreement among the eight school districts."); *see also Baker,* 520 F.2d at 800 n. 1 & 803 n. 11; *Powers,* 359 F.Supp. at 34–35; *Leopold,* 340 F.Supp. at 1017–18.

**14.** 587 F.2d 66 (1st Cir.1978).

**15.** 387 U.S. 105, 111, 87 S.Ct. 1549, 1553, 18 L.Ed.2d 650, 655 (1967), *quoted in Burton,* 587 F.2d at 69.

say that this court would have struck down that apportionment scheme.

█ Notwithstanding that the District's apportionment scheme was freely negotiated and approved by the citizens of each member city or town, it violates the one person-one vote principle because, by not dividing the district's elected Committee members on a population basis as nearly as practicable, it deprives voters of the constitutional right to cast an equally weighted vote.[16]

We reverse and remand this matter to the district court with instructions to allow the defendant District a reasonable period in which to submit a plan of reapportionment in accordance with the one person-one vote principle.[17]

LEVIN H. CAMPBELL, Chief Judge (concurring).

I concur since I believe Judge Wisdom makes a strong case that we are bound by precedent to strike down this apportionment scheme. I confess, however, that I am less than enthusiastic about our day's work.

The one man, one vote principle arose to prevent a political, racial or like majority from stripping minority voters of their equal rights. Here these underlying factors seem conspicuously absent: the decision of Brockton voters to join a plan in which their city has less control over a regional school than the relative population of Brockton might justify, arose presumably from a conscious decision, free from political bias or racial taint, that Brockton interests would be satisfactorily served thereby. We do not know what mix of factors prompted this judgment: perhaps the proportion of children from Brockton attending the school is less than its relative population would indicate; perhaps the impact on Brockton's taxpayers is likewise relatively less; perhaps Brockton is satisfied that two representatives are adequate watchdogs given the nature of the scheme. Whatever the reasons, it seems clear that Brockton, unlike some disenfranchised minority, has been and remains perfectly capable of looking after its own interests. This seems to be a situation to which the concerns that prompted the guiding constitutional precedents are scarcely relevant.

The argument for our result is that one cannot depart from a particular legal doctrine every time the reasons for it are only faint. To be sure, it is the language of the equal protection clause, not cases construing it, which is the primary focus, but as an inferior court we cannot take too much on ourselves. I therefore concur.

---

**16.** The District has also argued that the one person-one vote principle is inapplicable because member communities may freely withdraw from the District. We need not address the correctness of this argument. We read the District's agreement of association as not permitting an individual member to withdraw freely. Although a member may initiate the withdrawal process, the agreement contains the onerous requirement that no withdrawal is effective unless each of the other city or town members approves the action.

**17.** *See e.g., Powers,* 359 F.Supp. at 36; *Leopold,* 340 F.Supp. at 1019. A number of options consistent with the one person-one vote principle are available to the District. These include: electing Committee members by voters in member communities with each community's representation apportioned according to population; electing members in District-wide, at-large elections; electing members in District-wide, at-large elections with residence requirements; weighting the votes of Committee members according to the population they represent; and appointing Committee members by locally elected officials such as school board members.