[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO STRIKE THE FIRST COUNTOF THE PLAINTIFF'S AMENDED APPEAL FROM THE LEVY OF A SEWER ASSESSMENT
Shipman Goodwin for plaintiff. CT Page 9271
Katz Seligman for defendant.
The plaintiff, Regional School District No. 8 (hereafter School District), which is a regional middle school and high school district for the towns of Hebron, Andover and Marlborough, and is the owner of property on RHAM Road in the town of Hebron on which the School District's middle school and high school are located, has taken this appeal from the levy by the defendant the Water Pollution Control Authority of the town of Hebron (hereafter WPCA), of an assessment of benefits in the amount of $732,480 under § 7-249 of the General Statutes which permits a town's water pollution control authority to "levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited" by the construction of a municipal sewerage system.
In the first count of its amended appeal the School District claims aggrievement and challenges the assessment on two grounds, first, that its real property is exempt from taxation under § 12-81 (7) of the General Statutes because it is owned by "a corporation organized exclusively for . . . educational purposes" within the meaning of the statute and is therefore not subject to the sewer assessment and second, because "[p]ublic school property owned by the School District and used for school purposes is exempt from assessment unless otherwise provided by statute." The defendant has moved to strike the first count because it fails to state a claim upon which relief can be granted and argues in support of its motion that the School District's property is subject to the assessment because it is not a "tax" within the meaning of § 12-81 (7) and because § 7-249 applies to all property without regard to its ownership or to the purpose for which it is used.
The authority to levy special assessments for benefits is an aspect of the taxing power but the two terms are neither synonymous nor interchangeable because taxes "are the regular, uniform and equal contributions which all citizens are required to make for the support of the government [while an] assessment for benefits may lack each of these qualities and yet be valid." City of New Londonv. Miller, 60 Conn. 112, 116. A special assessment, unlike a tax, "is a local assessment imposed occasionally, as required, upon a limited class of persons interested in a local improvement; who are CT Page 9272 assumed to be benefitted [benefited] by the improvement to the extent of the assessment; and it is imposed and collected as anequivalent for that benefit, and to pay for the improvement." Bridgeport v. New York N.H.R. Co.,36 Conn. 255, 262-63.
The defendant's argument in Bridgeport v. New York N.H.R.Co., supra, 36 Conn. 261, was that because a statute imposed a franchise tax on all railroads "in lieu of all other taxes", a special assessment for benefits from the laying out of a highway constituted a tax and could therefore not be imposed. The Supreme Court rejected that argument on the ground that such an assessment has "never been regarded as a tax, or termed such in legislative proceedings . . ." and that it could not have been the intent of the legislature in enacting the statute to exempt the railroad from the payment of a special assessment. Id. 263.
The Supreme Court's holding in Bridgeport, supra, is dispositive of the plaintiff's first ground of appeal based on its claim that its statutory exemption from taxation under § 12-81(7) of the General Statutes can be construed as an exemption from special benefit assessments as well. It should also be noted, as the defendant points out in its reply memorandum (p. 6), that it appears from the plaintiff's memorandum in opposition to the motion to strike that it has all but abandoned its original claim "that it is exempt from assessment because it is exempt from taxation."
The legal issue raised by the defendant's motion to strike, which is a question of first impression in this state, is whether public school property is subject to assessment for special benefits in the absence of a constitutional or statutory exemption from the imposition of such charges where the school district's property is used exclusively for educational purposes and is permanently dedicated to such use. The WPCA's argument is that an exemption from a special benefit assessment cannot be implied in the absence of a clearly expressed legislative intention to do so, that the construction of a sewerage system is a public improvement which is as beneficial to school property as it is to privately-owned property, and that the school district should pay for the benefits which its property receives and not impose its burden upon the other property owners in the municipality.
Section 7-249 of the General Statutes provides in relevant part as follows: "At any time after a municipality, by its water pollution authority, has acquired or constructed, a sewerage system . . . the water pollution control authority may levy benefit CT Page 9273 assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby . . . and upon the owners of such land and buildings . . . . The sum of [such] assessments shall not exceed the special benefit accruing to the property . . . . No assessment shall be made against any property in excess of the special benefit to accrue to such property." Section 7-255(a), which is also a part of Chapter 103 of the General Statutes relating to municipal sewerage systems, authorizes water pollution authorities to establish "fair and reasonable charges for connection with and for the use of a sewerage system." It also provides that "[m]unicipally-owned and other tax-exempt property which uses the sewerage system shall be subject to such charges under the same conditions as are the owners of other property . . . ."
The consistent legislative policy of this state has been to consolidate and centralize schools and their administration and the statutes authorizing towns to consolidate to form regional districts permits towns to give their children the benefit of modern school buildings and facilities that they could not otherwise afford to construct and maintain independently of each other. Regional High School District No. 3 v. Newtown, 134 Conn. 613,617. The regional board is a quasi-municipal corporation, established by the state to carry out one of its governmental purposes and the withdrawal of any town from the district or the dissolution of the district itself is subject to the requirements and conditions imposed by the applicable statutes. Id. 620-21; General Statutes § 10-63g.
Although regional boards of education lack certain powers that are ordinarily considered "governmental" in nature there is no question that they perform a sufficiently extensive range of governmental activity to require the application of one person-one vote principles. Baker v. Regional High School District No. 5,520 F.2d 799, 801 (2nd Cir. 1975). The powers that such boards have in fulfilling what has traditionally been a vital governmental function make it reasonable to describe its members as "governmental officials" in every relevant sense of the term. Id.
Boards of education at both the local and regional level act as agents of the state when they perform the statutory duties imposed upon them by the constitutional mandate of article eighth, § 1 of the Connecticut constitution, but local boards "may at times have divided loyalties" because they act as agents of their respective towns as to budgetary matters and in discharging their CT Page 9274 statutory duty of "maintaining control over the public schoolslocated within the municipalities' limits." ConnecticutAssociation of Boards of Education, Inc. v. Shedd, 197 Conn. 554,563 (emphasis added). Regional school boards, on the other hand, are charged with specific statutory duties that transcend town lines and their principal function is to perform their constitutionally mandated educational duties on a regional basis as agents of the state in operating and maintaining the schools of the district in order to advance the state's interest in the consolidation and centralization of school administration so that the constitutional mandates can be fulfilled more efficiently and economically.
"Public schools are creatures of the State [and a}] school board exercises pervasive and continuing responsibility over the long-range planning as well as the daily operations of the public school system." Keyes v. School District No. 1, 413 U.S. 189, 227
(1973). The question of whether "state action" exists for purposes of equal protection analysis under our state constitution must be considered in the light of the fact that educational authorities on the state and local level are "significantly involved in the control, maintenance and ongoing supervision" of the public schools of this state. Sheff v. O'Neill, 42 Conn. Sup. 172, 174.
It should be noted that if the lands and buildings which were assessed in this case had been owned by the state, this court would have been required to follow the rule stated in State v. Hartford,50 Conn. 89, that the broad language of § 7-249 "not only does not expressly or by necessary implication include the state, but, on the contrary, by necessary implication excludes it." Id. 90. The court acknowledged that the state as the holder of the mortgage securing a loan from the School Fund would be benefited to the amount of the assessment by the construction of the sewer, "and that it is unjust that individuals should bear the burden properly belonging to the property of the state, while it virtually puts into its treasury the enhanced value of its property acquired at others' expense", but that only the legislature has the power to authorize that its property be assessed for local improvements. Id. 92.
Interestingly enough, one of the cases cited by the Supreme Court in State v. Hartford, supra, as authority for its holding that the principle of sovereign immunity applies where property of the state is the subject of a special benefit assessment isInhabitants of Worcester County v. City of Worcester, CT Page 9275116 Mass. 193, which involved a sewer assessment imposed by the city of Worcester on the property of another political subdivision of the state, Worcester County, rather than on property of the state itself. The public buildings assessed by the city were the county courthouse and jail, and the court held that although the state was not the record owner, the authority under which the county owned the property was derived from the statutes which imposed upon it the duty of providing suitable courthouses and jails. Id. 194.
The Massachusetts court went on to say that the property in question, "although held by the counties, are so held for the uses and purposes of the Commonwealth, are essential to the administration of the executive and judicial duties of its government, and are not deemed subject to taxation in any form
unless the intent of the legislature to render them so clearly appears." Id. (emphasis added). The Worcester County Case has been repeatedly cited as authority by those state courts that have adopted the rule that the property of a school district is not subject to taxation in any form, including special benefit assessments, unless such charges are imposed by express enactment or by clear implication, and the Supreme Judicial Court of Massachusetts has reaffirmed that rule in Boylston Water Districtv. Tahanto Regional School District, 227 N.E.2d 921 (Mass. 1967), the only reported case involving the levy of a special assessment on a regional school district found in the course of the court's research.
It is also of some significance that the United States Supreme Court has cited State v. Hartford, supra, as well as Worcester for the proposition that "General tax acts of a State are never, without the clearest words, held to include its own property orthat of its municipal corporations, although not in terms exempted from taxation." Van Brocklin v. State of Tennessee, 117 U.S. 151
at 173-74 (1886) (emphasis added). In the same opinion, the Court, after quoting from the Worcester Case also cited a New Jersey decision which stated that because taxation of public property necessarily involves the imposition of other taxation in order to pay it, `the public would be taxing itself in order to raise money to pay over to itself [and the inference] is that the general language of the statutes prescribing the property which shall be taxable is not applicable to the property of the state or its municipalities. Such property is therefore, by implication, excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it.' Id. 175. CT Page 9276
In the only Connecticut case dealing with a special benefit assessment for a public improvement which was challenged by a school district, City of Hartford v. West Middle District, 45 Conn. 462, the Supreme Court found in favor of the school district stating that "[w]e are unable to see how the district as a corporation could be so benefited, or that their property was rendered any more valuable for the purpose for which they use it, and for which they must continue to use it, if not for all time, at least for a very long time." Id. 463-64. The WPCA, in its original memorandum in support of its motion (p. 8), argues that the court in that case "at least implicitly [recognized] that assessments of benefits against school districts are proper."
The court also stated by way of explaining its conclusion that "[t]he assessment was undoubtedly made upon the idea that the intrinsic value of the property was increased, but, if that were so as a matter of fact, does it follow that it was increased in value as school district property, bought and used solely for school purposes, and did the district, or could it from the nature of things, derive any immediate, direct or special benefit from the laying out of the street?" Id. 463. Although the court speaks in terms of the particular improvement which generated the assessment, namely, the "laying out of a street", it can reasonably be argued that the rationale for its rejection of the assessing authority's basis for its assessment could be equally applicable to an assessment for benefits of a sewerage system.
The fundamental principle upon which special assessments are made and justified is that "[t]he value of [the owner's] property has been increased to the extent of the benefit assessed upon it."Connecticut Railway Lighting Co. v. Waterbury, 127 Conn. 617,619. In order to be "especially" benefited the owner need not be the sole beneficiary of the public improvement, but rather that it "must confer a benefit upon the property owner that is distinct from the benefit which accrues to the general public, namely, it must increase the market value of the individual's property." Cyrv. Coventry, 216 Conn. 436 at 442.
An increase in market value ordinarily result from access to a sewerage system and current actual use is not ordinarily a determinative factor in the assessment of benefits since it is often unrelated to market value and fails to reflect the increase in market value resulting from the installation of sewers. TowerBusiness Park Associates No. 1 Ltd. Partnership v. Water PollutionControl Authority, 213 Conn. 112, 119. "If the benefit to property CT Page 9277 from sewer access were to be measured by actual use rather than by its impact on market value, an assessment for benefits under § 7-249 would be a virtual duplication of the charges made by the defendant for use of the sewers as authorized by General Statutes § 7-255." Id.
The benefit conferred upon land by a public improvement is governed by the same rules under which land values are determined for other purposes, that is, the question is "[h]ow much has the particular improvement added to the fair market value of the property, as between a willing seller and a willing buyer, with reference to all the uses to which it is reasonably adapted and for which it is plainly available, prospective as well as present, by strangers as well as by the owner?" Driscoll v. Inhabitants ofNorthbridge, 96 N.E. 59 at 61 (Mass. 1911). "Chances and probabilities of future use, if sufficiently near in time and definite in kind to be of practical importance, enter into present market value, and so far as they enhance or diminish it are to be given full weight [but] where they are so remote as to rest chiefly in the imagination, and do not in fact influence the price which customers would be willing to pay in a present sale, they cannot bethe basis of a determination of benefit or value." Id. (emphasis added).
The difficulty, if not the impossibility, of determining the market value of a public school building based on the foregoing standards may have well been the basis for the Supreme Court's holding in City of Hartford v. West Middle District, supra,45 Conn. 462, that in order for an assessment of benefits to be "legal and valid, it must appear that the benefit is direct and immediate, and not contingent and remote." Id. 464. The problems inherent in the valuation of such property arise because "[s]chool property stands on a different footing from that of private property, and is used for a different purpose." City of Butte v. School DistrictNo. 1, 74 P. 869, 870 (Mont. 1904).
"It is not held for speculation, rentals, or private occupancy; is not subject to barter or sale, within the ordinary meaning of these terms; its intrinsic worth is its value for educational purposes; it is not affected by market fluctuations. Its money value is immaterial; its true worth is its effectiveness for educational purposes." Id.
The remaining issue raised by the parties in their briefs relates to the inference that can reasonably be drawn from the fact CT Page 9278 that § 7-255 specifically includes "municipally-owned and other tax-exempt property" as being subject to connection and use charges, while § 7-249 does not specifically include such property as being subject to special benefit assessments. If, as the WPCA asserts in its reply memorandum (p. 7) that "[i]t is self-evidently fair that all users, [public and private] pay their fair share of the operation of the system" there would seem to have been no compelling reason to legislate the obvious, unless, of course, the General Assembly assumed (consistently with the court's conclusion in this case) that property owned and used by political subdivisions of the state for public purposes was exempt from special assessments for benefits resulting from the construction of a municipal sewerage system and that its intention was to make it clear that the implied exemption did not apply to use and connection charges under § 7-255.
For the foregoing reasons, the defendant's motion to strike the first count of the amended appeal from the levy of sewer assessment is denied.
Hammer, J.