**Mitchell C. STRICKLAND, et al., Plaintiffs,**

v.

**LAMAR COUNTY BOARD OF COMMISSIONERS, et al., Defendants.**

**No. Civ. A. 86–167–2–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

Nov. 25, 1992.

H. Christopher Coates, Milledgeville, Ga., Randal A. Mangham, Atlanta, Ga., for plaintiffs.

Norman Smith, Barnesville, Ga., for Lamar County Bd. of Com'rs, D.K. Cochran, George E. Lykins, James A. Williams and Marilyn Smith.

O. Hale Almand, Jr., Macon, Ga., Sam S. Harben, Jr., Gainesville, Ga., for Lamar County Bd. of Educ., Lewis Webb and Raymond Akridge.

O. Hale Almand, Jr., Macon, Ga., Sam S. Harben, Jr., Gainesville, Ga., Norman Smith, Barnesville, Ga., for Dar Bohnenstiehl, James Gilbert, Horace Hightower and John L. Walter.

## ORDER

OWENS, Chief Judge.

Before the court is plaintiffs' motion for an award of attorney fees. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

Mitchell C. Strickland, et al., ("plaintiffs") filed suit against the Lamar County Board of Commissioners and the Board of Education on May 30, 1986, alleging a cause of action under the Voting Rights Act of 1973, 42 U.S.C. § 1973 et seq., and the Fourteenth and Fifteenth Amendments of the United States Constitution. Plaintiffs' complaint sought a declaratory judgment stating that the Boards of Commissioners' and Education's at-large voting procedures violated plaintiffs' rights as secured under the Voting Rights Act and the Fourteenth and Fifteenth Amendments, a permanent injunction replacing the current at-large system with single member districts, and reasonable attorney's fees and costs.

At the time this lawsuit was initiated, the Lamar County Board of Commissioners was composed of three commissioners who were elected on an at-large basis. According to the 1980 census, the population of Lamar County is 12,215 persons, of which 7,981 (65.33%) are white persons and 4,130

(33.81%) are black persons. One black person has been elected to serve as a member of the Lamar County Board of Commissioners and one black person has been elected to serve as a member of the Lamar County Board of Education. (Plaintiffs' Complaint, ¶ 21).

The Board of Commissioners had been in the process of changing the method of electing commissioners prior to the filing of this lawsuit. In the Fall of 1984 the Board asked the State Reapportionment Office to draw some redistricting maps for Lamar County. The Reapportionment Office submitted three plans to the Board, which are referred to as P–3, P–4, and P–5.[1] The Board selected and the Georgia General Assembly enacted Plan P–4, which became law on March 28, 1985.[2]

Preclearance of Plan P–4 was denied by the United States Department of Justice in March of 1986. The Board concluded that Plan P–4 was denied preclearance not because of the four plus one configuration, but because Plan P–4 lacked two majority black districts. (Affidavit of Norman Smith, ¶ 6). The Board then modified Plan P–4 to include two black majority districts instead of one. This new plan is referred to as Plan PX. Shortly thereafter, plaintiffs filed this lawsuit.

During the summer of 1986, the attorneys for the Lamar County Board of Commissioners and Board of Education attempted to negotiate a Consent Decree with plaintiffs' attorneys. The Consent Decree essentially called for implementation of Plan PX. Plaintiffs indicated that they would only accept Plan P–5. (Affidavit of Norman Smith, ¶ 19).

On October 9, 1986, this court held a discovery conference. Again, plaintiffs took the position that only Plan P–5 would be acceptable. (Transcript of October 9,

1992 conference at 5). Thereafter, the court stayed discovery so as to permit the Board of Commissioners to seek enactment of Plan PX by the Georgia General Assembly and submission of the same to the United States Department of Justice for preclearance under section 5 of the Voting Rights Act.

In March of 1987, the Georgia General Assembly enacted Plan PX. The General Assembly also enacted legislation providing that four members of the Board of Education shall be elected from the same four districts used in the Board of Commissioners elections and that the remaining school board member shall be elected on an at-large basis. Both enactments were precleared by the Justice Department in October of 1987. Special elections were then scheduled for March 8, 1988, to implement Plan PX.

On January 25, 1988, plaintiffs filed a motion for preliminary injunction to enjoin the special elections. This court held a hearing on February 4, 1988, and thereafter denied plaintiffs' motion.

Plaintiffs then filed a motion for summary judgment, which this court denied on account of mootness. The lawsuit was dismissed without prejudice on March 17, 1992, for want of prosecution. Plan PX remains in effect today.

Plaintiffs' counsel, Chris Coates, has now filed a motion for an award of attorney's fees and costs. Defendants contend that plaintiffs have not "prevailed" under 42 U.S.C. §§ 1973e or 1988 and are therefore not eligible for an award of attorney's fees.

## DISCUSSION

██ A district court may award reasonable attorney's fees as part of the costs to the prevailing party in any action or proceeding to enforce voting rights. 42 U.S.C.

---

1. Plan P–3 consisted of three single member districts. Plan P–4 consisted of four single member districts and one county wide district (the chairman). This plan called for one majority black district. Plan P–5 consisted of five single member districts, with the Board selecting the chairman. This plan called for two black majority districts. (Affidavit of Norman Smith, ¶ 3).

2. The Board of Education decided to await the results of the Justice Department's review of Plan P–4 rather than create a new plan of its own so that there would not be overlapping districts within the relatively small county of Lamar.

§§ 1973e & 1988. To be considered a prevailing party for purposes of attorney's fees, the plaintiffs must have succeeded on "any significant issue" in litigation that achieved some of the benefits the parties sought in bringing the suit. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

 Judicial relief is not necessary for a plaintiff to be considered a "prevailing party." To obtain prevailing party status, a party need only secure some relief, for instance "a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right." *Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir.1982). Thus, voting rights plaintiffs are eligible for attorney's fees even when a defendant takes remedial action that moots the lawsuit. *Williams v. Leatherbury*, 672 F.2d 549, 551 (5th Cir.1982). In that event, the plaintiff may recover fees by showing "both a causal connection between the filing of the suit and the defendant's action and that the defendant's conduct was required by law, *i.e.*, not a wholly gratuitous response to an action that in itself was frivolous or groundless." *Id.* If the plaintiffs' lawsuit is a "substantial factor or a significant catalyst in motivating defendants to end their unconstitutional behavior," the plaintiffs will be deemed to have prevailed. *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1560 (11th Cir.1987). However, a voting rights plaintiff "may not collect attorney's fees for demanding that a state officer do what he would have done in any case." *Coen v. Harrison County Sch. Bd.*, 638 F.2d 24, 26 (5th Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 647 (1982).

After reviewing the factual history of this case, the court finds that plaintiffs' lawsuit was not a "substantial factor" or "significant catalyst" in motivating defendants to replace the at-large voting scheme with single member districts. Defendants'

efforts to change the existing election process preceded the filing of plaintiffs' complaint. Nor was the lawsuit a "substantial factor" or "significant catalyst" for the Georgia General Assembly enacting Plan PX, which remains in effect today. Finally, plaintiffs did not even obtain the relief, enactment of Plan P–5, that they requested. Consequently, the court concludes that plaintiffs have not prevailed under 42 U.S.C. §§ 1973e or 1988 and thus may not recover attorney's fees.

## CONCLUSION

Accordingly, the court DENIES plaintiffs' motion for attorney's fees.

SO ORDERED.